ESTHER KLAPHOLTZ, as Administratrix de Bonis Non, etc., of MAX KLAPHOLTZ, Deceased, Respondent, *v.* NEW YORK LIFE INSURANCE COMPANY, Appellant.

First Department, December 31, 1926.

Insurance — life insurance — action on policy — defense of material false representations in application — insured had been under treatment for tuberculosis in sanitarium within five years of issuance of policy — insured stated in application that he had not been under observation or treatment in hospital or sanitarium and had not consulted physicians within past five years, except for hoarseness just before application — medical examiner listed hoarseness as " laryngitis, probably chronic " — insured died nine months after policy issued — examination by defendant's physician did not relieve insured from necessity of making accurate statement — defendant had no knowledge of undisclosed medical history — error not to direct verdict for defendant.

In an action on a life insurance policy in which the defendant asserted the defense that the insured made material false representation in his application, which was attached to and became a part of the policy, it was error for the court not to direct a verdict for the defendant, since it appears by uncontradicted evidence that within five years prior to the issuance of the policy the insured had been treated in a sanitarium for tuberculosis and was under treatment at that sanitarium for a period of three years; that the insured in his application stated that he had not been under observation or treatment in a hospital or sanitarium within the past five years and had not consulted a physician for lung trouble, except for hoarseness a short time before the application was made; that the defendant's examining physician characterized the hoarseness as " laryngitis, probably chronic; " and that the insured died nine months after the policy was issued.

The fact that the defendant's physician examined the insured at the time of the application does not overcome the effect of the false statement made by the insured, and since there is absolutely no evidence that the defendant had any knowledge of the undisclosed medical history or that in issuing the policy it relied upon anything other than the insured's representations and the medical examiners' report, and since it appears that the evidence is directly to the contrary, it cannot be held that the insurance company waived the effect of the false representations.

APPEAL by the defendant, New York Life Insurance Company, from an order and determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 4th day of May, 1926, affirming a judgment of the City Court of the City of New York in favor of the plaintiff.

*Louis H. Cooke* of counsel [*Ferdinand H. Pease* with him on the brief], for the appellant.

*Abraham Lillienthal* of counsel [*Forscher, Lillienthal & Morris,* attorneys], for the respondent.

BURR, J.   Plaintiff sues to recover upon a policy of insurance for $1,500 issued by defendant March 18, 1924, on the life of Max Klapholtz, who died January 25, 1925, and defendant sets up as a defense material misrepresentations in the application for the policy as to the medical history of the insured upon the discovery of which misrepresentation after his death it elected to rescind the contract and tendered back the premium received thereon with interest.

The only fact disclosed by the insured in his application as to his medical history was hoarseness for two weeks prior thereto, which the medical examiner termed "laryngitis — probably chronic," and on account of which the policy was rated up three years. Defendant proved on the trial by uncontradicted evidence that the insured had entered the sanitarium of the Metropolitan Life Insurance Company at Mt. McGregor, N. Y., in 1918, suffering from tuberculosis, where he remained as a patient for three years under the constant attendance of physicians, all of which facts were concealed by him in the face of direct questions calling for such information and there was no evidence whatever that the defendant had any knowledge thereof until after the insured's death.

The trial judge refused to grant the defendant's motion for a directed verdict and submitted the case to the jury upon two questions: *First,* whether the insured concealed material facts, and, *second,* whether the defendant relied upon his representations.

The jury found a verdict for the plaintiff and from the determination of the Appellate Term affirming without opinion the judgment entered thereon defendant appeals.

On the 11th day of March, 1924, Max Klapholtz made written application to defendant for $1,500 of insurance on his life for the benefit of his estate and on the 13th day of March, 1924, as a part of his application, went before one of the defendant's medical examiners and made and signed written answers to certain questions among which were the following:

"7B. Have you been under observation or treatment in any hospital, asylum or sanitarium?   No.   *   *   *

"8. Have you consulted a physician for or suffered from any ailment or disease of   *   *   *

"B. The Heart, Blood Vessels or Lungs?   Yes.   Hoarseness for past 2 wks.   *   *   *

"10. Have you consulted a physician for any ailment or disease not included in your above answers?   No.

"11. What physician or physicians, if any, not named above have you consulted or been examined or treated by within the past five years?   None."

These answers the applicant agreed over his signature to be full, complete and true and he further agreed that the defendant believing them to be true should rely and act upon them.

Pursuant to such application and in reliance upon the representations contained therein the defendant issued the policy in suit dated March 18, 1924, rated up three years, because of the history of hoarseness for two weeks which defendant's medical examiner termed " laryngitis — probably chronic," and a copy of said application was attached to the policy and made a part thereof.

It was stipulated that the insured, Max Klapholtz, was employed by the Metropolitan Life Insurance Company under the name of " Jacob," and was known there as " Jacob " Klapholtz. This change of name resulted from the fact that the insured's brother, the real Jacob Klapholtz, had applied for a position in such company which Max filled under the name of " Jacob."

Defendant put in evidence an application signed by the insured at Mt. McGregor, N. Y., under the name of " Jacob " Klapholtz on April 15, 1918, to the Metropolitan Life Insurance Company, wherein the insured applied for disability benefits from that company and stated that his disability was caused by tuberculosis, designated " T. B.," for which he had received continuous treatment by a physician commencing on March 15, 1918, and because of which he became unable to work on March 25, 1918.

The defendant's witness Richard H. Morgan testified that since May 7, 1918, he had been an associate physician of the Metropolitan Life Insurance Company at its sanitarium at Mt. McGregor, N. Y., where employees of that company were admitted; that " Jacob " Klapholtz was at this sanitarium in 1918 and remained there about three years; that he saw him practically daily and attended him and examined and treated him as a patient and considered him sick during the three years he was there.

The plaintiff, called as a witness for the defendant, admitted that she received payments by check from the Metropolitan Life Insurance Company every week during 1918, 1919, 1920 and 1921 while the insured was away.

The insured's brother, the real Jacob Klapholtz, called as a witness for defendant, admitted that the insured was at Mt. McGregor during the years in question. When asked: " Do you know why he was there? " he answered: " Well, he took sick as far as I know, wasn't feeling well at the time," and when asked how long he stayed there, answered: " Around about a couple of years, I think."

The policy was rated up three years from age twenty-eight to thirty-one, and for the purpose of showing that such rating did

not in any way relate to the undisclosed medical history, but solely to the hoarseness and laryngitis disclosed, the defendant called Dr. Howley, the medical examiner, who testified that he noted the applicant's hoarseness and his reference thereto and called it laryngitis.

The defendant also called Dr. Pratt, a member of its medical board, and John H. White, a member of its classification committee, both of whom testified that they had passed upon and approved the application in reliance upon the representations contained therein and had placed the rating of three years on the case solely because of the hoarseness or laryngitis.

It was conceded that defendant tendered back to the original plaintiff the amount of premium received on the policy and notified him of its election to rescind the same, and such tender was renewed in open court.

The plaintiff's *prima facie* case consisted of the policy and a concession that the premium was paid thereon, and the only witness in rebuttal was the soliciting agent from whom the plaintiff elicited merely the fact that he had tried for about two and a half years to induce the insured to take out insurance and finally delivered the policy in suit.

The record clearly shows the falsity of the representations. The uncontradicted evidence is that the applicant was at Mt. McGregor Sanitarium of the Metropolitan Life Insurance Company from 1918 to 1921. While the privilege of the physician prevented defendant from showing the diagnosis, the application of the insured for admission to the Mt. McGregor Sanitarium which defendant introduced in evidence contained an admission by the insured that he had tuberculosis, and Dr. Morgan, an associate physician at the sanitarium, testified that the insured was sick while there during approximately three years and that he examined him and treated him during that period, and the insured's brother admitted insured was at Mt. McGregor. There was no attempt whatever on the part of plaintiff to contradict this evidence.

Every fact which is untruly stated or wrongfully suppressed must be regarded as material if the knowledge or ignorance of it would naturally and reasonably influence the judgment of the underwriter in making the contract at all or in estimating the degree or character of the risk or in fixing the rate of premium.

In *Archer* v. *Equitable Life Assur. Soc.* (218 N. Y. 18), the court said (at p. 20): " The false representations related to facts which would enter into the estimation by the defendant of the risk to be assumed by it in effecting the insurance, that is, to the prior physical condition, in various respects, of the insured, the last time he had

consulted with a physician, the causes of the deaths of his parents and the time of the death and age at death of his father."

The subject of the insurance is the life of the applicant, and the insurer, before deciding whether or not it will accept the risk and insure such life is clearly entitled to know, and it is the applicant's duty to disclose to it, every fact bearing on or pertaining in any way to the insurability of such life, especially where specific questions are put to the applicant calling for such information.

In *Saad* v. *New York Life Ins. Co.* (201 App. Div. 544; affd., 235 N. Y. 550), the applicant denied that he had suffered from any ailment or disease of any kind or character or had consulted with or been treated by any physician within five years then last past, whereas the defendant proved that he had consulted and been treated by a physician on numerous occasions. This court said in its opinion: " The information which the defendant sought from the signed application was whether any physician had been consulted. The answer to this question was that none had been consulted. Whether or not the consultation was in reference to a material matter was for the defendant to judge and not for the insured or his physician to pass upon."

In *Sparer* v. *Travelers Ins. Co.* (185 App. Div. 861) the applicant denied that he had received medical or surgical attention within five years. The medical examiner for the company noticed a scar on his abdomen and upon inquiry was told that the scar was due to a slight operation performed in Austria two or three years before for an abscess with which he was confined a week or ten days, and the examining physician, thinking this a slight matter, recommended the granting of the policy. Proof showed, however, that the applicant had spent three weeks in a New York hospital three months prior to the application and also that the operation partially disclosed had been a very serious one. Judgment for plaintiff was reversed, this court holding that the materiality of the misrepresentation was for the court and not for the jury.

In *Mutual Life Ins. Co.* v. *Hurni Packing Co.* (260 Fed. 641) the Circuit Court of Appeals' said (at p. 645): " A chief part of any insurance company's business is a discrimination in selecting risks lest the natural and average losses may be exceeded. The purpose of the inquiries made as to prior consultations or treatments by physicians is to furnish to a life insurance company the information, either that the applicant has had continuous prior good health or the names of the practitioners consulted, so that the company may decide what further inquiries should be made in view of such disclosures. That such consultations were for what seemed to the applicant or his physician but trivial ailments is

beside the question. It is the materiality to the company's investigation and decision as to acceptance of the risk that is involved. Inquiries as to prior attacks necessitating the attendance of physicians may disclose information not to be found by the medical examiner's own efforts. The history of the patient may be quite essential to supplement a physical examination."

The only evidence that the defendant relied upon anything outside the answers made by the applicant was the evidence that the defendant's examining physician examined the insured at the time of his application and reported to the company that he found evidence of " laryngitis — probably chronic." The applicant gave a misleading and false answer to the medical examiner. The question read: " 8. Have you consulted a physician for or suffered from any ailment or disease of * * * B. The Heart, Blood Vessels or Lungs? " The answer was: " Yes, Hoarseness for past 2 wks."

Aside from the questions relating to physicians and ailments there is a specific question in the application designated " 7B," which reads as follows: " 7B. Have you been under observation or treatment in any hospital, asylum or sanitarium? "

To this question the applicant answered, " No," and this answer is a serious misrepresentation irrespective of the answers to any of the other questions as it was clearly proven that the insured was at Mt. McGregor Sanitarium for several years suffering from tuberculosis.

There is no evidence whatever in the case that the defendant had any knowledge of the undisclosed medical history or that in issuing the policy it relied upon anything other than the insured's representations in his application and the medical examiner's report, and on the contrary the evidence shows conclusively that at the time of the issuance of the policy the defendant relied solely upon such representations and the medical examiner's report and that its only knowledge of any adverse medical history of the insured was the hoarseness or laryngitis.

There being no question for the jury, the trial court should have directed a verdict for the defendant, and the determination appealed from should, therefore, be reversed, with costs in this court and in the Appellate Term, and final judgment granted to the defendant dismissing the complaint upon the merits, with costs.

CLARKE, P. J., DOWLING, MERRELL and McAVOY, JJ., concur.

Determination of Appellate Term and judgment of the City Court reversed, with costs and disbursements in this court and in the Appellate Term, and judgment directed in favor of the defendant dismissing the complaint upon the merits, with costs.